IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RODOLFO LOYA JR., § | | |
|     Plaintiff, § | | |
| v. § | NO. EP-14-CV-0315-DCG | |
| § | (-NJG by consent) | |
| CAROLYN W. COLVIN, § | | |
| Acting Commissioner of Social Security § | | |
| Administration, § | | |
|     Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was referred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C of the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner) denying his applications for disability insurance benefits (DIB) and for supplemental security income (SSI) under Titles II and XVI, respectively, of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

Plaintiff was born July 11, 1983, and completed a high school education and an Associate's Degree. (R:4, 44)[1] He has experience working as a manager and customer service, with a financial institution or loan company. (R:43) Plaintiff discontinued working in June 2012, due to restless leg

---

[1] Reference to the Administrative Record, contained in Docket Entry Number 16, is designated by and "R" followed by the page number(s).

syndrome and HIV. (R:4-5, 106-107)

## PROCEDURAL HISTORY

On January 14, 2013, Plaintiff filed applications for DIB and SSI benefits, with an alleged onset date of June 1, 2012. (R:35) The claims were denied initially and on reconsideration. A hearing was held on December 3, 2013. (R:3-20) The Administrative Law Judge (ALJ) issued her decision on January 29, 2014, finding Plaintiff not disabled, and denying benefits. (R:35-45) The Appeals Council denied Plaintiff's request for review. (R:26-30)

In her decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of June 1, 2012, and that he met the insured status requirements through September 30, 2016. (R:37) She determined that Plaintiff had severe impairments of mild degenerative disc disease, restless leg syndrome and HIV, and non-severe impairments of GERD and depression. (R:38) However, She found that none of the impairments alone or in combination met or equaled the listing of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R:40) In determining the severity of Plaintiff's mental impairment, she found that Plaintiff had no limitations in daily living activities, social functioning, and concentration, persistence, or pace, and no episodes of decompensation of extended duration. (R:39)

After review of the evidence of record, the ALJ determined that Plaintiff retained the functional capacity to perform a limited range of sedentary work.[2] (R:40) Based upon vocational expert testimony, the ALJ found that Plaintiff could perform his past relevant work. (R:43)

---

[2] Sedentary work is defined as work involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567, 416.967

Considering Plaintiff's age, education, work experience, and RFC, along with the vocational expert testimony, the ALJ further determined that other jobs existed in significant numbers in the national economy that Plaintiff could perform. Accordingly, she determined that Plaintiff had not been under a disability from the alleged onset date through the date of the decision. (R:45)

Plaintiff filed the instant suit on August 20, 2014. [ECF No. 1, 5] Defendant filed an answer in response on November 3, 2014. [ECF No. 13] Plaintiff filed a brief in support of his claim on February 5, 2015. [ECF No. 21] On March 9, 2015, Defendant filed a brief in support of the Commissioner's decision denying Plaintiff's applications. [ECF No. 22]

## ISSUES

Plaintiff presents the following issues for review:

1. Whether the final decision of the Commissioner denying benefits is supported by substantial evidence; and

2. Whether the Commissioner applied an incorrect legal standard in determining that Plaintiff was not disabled.

In particular, Plaintiff contends that the ALJ erred in failing to find Plaintiff's mental impairments severe, and in failing to properly accommodate Plaintiff's mental limitations in her RFC finding. He further argues that the ALJ failed to give proper weight to the medical source opinion of treating physician, Dr. Ogechika Alozie. Consequently, Plaintiff maintains that the ALJ's disability determination is not supported by substantial evidence and results from legal error. He requests that the case be reversed, or in the alternative, remanded for further administrative proceedings.

## **DISCUSSION**

### *1. Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.*; *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

### *2. Evaluation Process*

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920.

The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520, 416.920. However, if the claimant has shown he cannot perform his previous work, the burden shifts to the Commissioner to show that there is other work available that the claimant can perform. *Crowley v. Apfel*, 197 F.3d. 194, 198 (5th Cir. 1999). If the Commissioner establishes other potential employment, the burden shifts back to the claimant to prove he is unable to perform the alternative work. *Id.* A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis. *Leggett*, 67 F.3d at 564.

### 3. Medical Evidence of Record

Medical evidence of record shows that Plaintiff was treated for asymptomatic HIV infection in 2011 and 2012 at the La Fe Care Center, having been diagnosed in 2010. (R:408-34) Plaintiff reported no pain symptoms or fatigue. (R:411-12, 432, 434) He denied any depression and declined counseling. (R:432)

Plaintiff was seen by Dr. Ogechika Alozie on February 26, 2013, for an HIV evaluation. (R:315-21, 374-80) He was assessed with HIV, GERD, and Restless Leg Syndrome. He complained of fatigue, but denied any problems since his last visit. His non-compliance with medications since his last visit was also noted. Dr. Alozie found no cognitive problems, and found him to be alert, oriented, and normal in mood and affect, with a normal attention span and concentration. Plaintiff denied any back pain, depression, anxiety, memory loss or suicidal ideation. Physical examination showed that he had good motor and sensory functions.

On March 8, 2013, Dr. Alozie completed a Medical Report on Adult with Allegation of HIV.

(R:322-23) He found that manifestations of the HIV were restless leg syndrome and marked limitations in Plaintiff's daily living activities, social functioning, and concentration, persistence, and pace.

On May 28, 2013, Plaintiff was again see by Dr. Alozie, and denied any problems since his last visit. (R:358-61) Dr. Alozie found no evidence of cognitive problems, and noted that his anxiety and stress were much improved. Plaintiff was alert and cooperative, with normal mood and affect, and normal attention and concentration. Physical examination showed normal gait and good motor and sensory functions. Plaintiff reported that his fatigue had improved and rarely occurred.

Plaintiff was also examined by Dr. Albert Cuetter on May 22, 2013. (R:370-73) The treatment notes indicate a depressed mood, anxiety, dizziness, back pain, and numbness or tingling. Plaintiff reported pain of four on a scale of one to ten. However, Plaintiff appeared alert and oriented, with a normal gait, no motor deficits, and a normal cerebeller test. His general physical examination was normal. Treatment notes by Dr. Cuetter on May 24, 2013, indicated that Plaintiff reported having no pain at that time.

On July 24, 2013, Plaintiff was seen by Dr. Cuetter, for his HIV and restless leg syndrome. (R:338-40) Plaintiff reported no pain on that date, and no side effects from his HIV medication. Physical examination showed Plaintiff to have a normal gait, and normal coordination, sensation, and muscle tone. Results of an EMG test showed no evidence of neuropathy. Results of MRI examinations of Plaintiff's spine showed mild degenerative changes in the lumbar and thoracic regions, and moderate spinal cord stenosis and mild dorsal displacement of the cervical cord. (R:342-50)

On November 14, 2013, Dr. Alozie completed a Medical Source Statement of Ability to Do

Work-Related Activities (Physical). (R: 400-403) He determined that Plaintiff was limited to lifting or carrying let than ten pounds occasionally, and walking or standing at least two hours in an 8-hour workday. Plaintiff's ability to sit was limited by pain in his legs and back, and required periodically alternating sitting and standing to relieve pain or discomfort. Dr. Alozie also attributed postural limiations, in that Plaintiff could never climb, kneel, or crouch, and only occasionally balance, crawl, or stoop. Dr. Alozie further found several environmental limitations, such as humidity, hazards, and fumes.

Finally, Dr. Alozie wrote a letter, dated February 12, 2014, on Plaintiff's behalf. (R:461) He indicated that Plaintiff was under his care for his chronic medical condition of HIV. He further stated that Plaintiff's medical conditions included GERD, and restless leg syndrome, and that his medications caused side effects of anorexia, fatigue, fever, night sweats, rash, body fat changes, SOB, cough, nausea, vomiting, diarrhea, weight loss, sore throat, dysphagia, swollen glands, change in vision, headaches, numbness, muscle weakness, and dysuria. He opined that Plaintiff was unable to sit, stand, or be out in the sun for an extended period of time.

### 4. Other Evidence

In a Function Report, dated May 24, 2013, Plaintiff related having problems with concentration, completing tasks, memory, and depression. (R:231-38) He also had extreme pain in his legs, and side effects from his medications. His activities included going shopping, using public transportation, attending church, and paying bills. He denied using a cane for walking.

### 5. Administrative Hearing Testimony

At the administrative hearing in December 2013, Plaintiff testified that he could not work due to his restless leg syndrome, HIV, and back pain. (R:4-5) He further testified that for the past

eight months he had been using a cane for walking, prescribed by a neurologist. (R:6) Plaintiff related that he received a referral for a psychologist from Dr. Alozie, but was waiting for a follow-up visit. (R:8) He testified that he experienced depression and anxiety as side effects of his medications. (R:10)

A vocational expert testified at the administrative hearing, as to Plaintiff's past relevant work. He described his past work as: a sales representative, communications equipment, DOT 271.257-010, light exertional level, and SVP level 6, skilled; restaurant manager, DOT 187.167-106, light exertional level, and SVP level 7, skilled; manager, financial institution or loan company, DOT 186.167-086, sedentary exertional level, and SVP level 8, skilled; and waiter, DOT 311.477-030, light work, and SVP level 3, semi-skilled.[3] (R:16)

When given a hypothetical about whether an individual could perform Plaintiff's past work, if able to perform light work, and allowed to shift positions from sitting and standing, with some postural and environmental limitations, but without any non-exertional mental limitations, the vocational expert testified that such individual could perform the loan company work at both the light and sedentary levels. (R:17-18) When asked whether work existed for such a person, at the sedentary, unskilled level, the vocational expert related that the person could perform jobs as: a final assembler, DOT 713.687-018, sedentary level, SVP 2, unskilled; cuff folder, DOT 685.687-014, sedentary level, SVP 2, unskilled; and egg processor, DOT 559.687-034, sedentary level, SVP 2,

---

[3] SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles*, Fourth ed., Revised 1991, Appendix C. The level of time for SVP 2 is "anything beyond short demonstration up to and including 1 month," while SVP 3 is over 1 month up to and including 3 months. *Id.* The level of time for SVP 6 is over 1 year up to and including 2 years, while SVP 7 is over 2 years up to and including 4 years, and SVP 8 over 4 years up to and including 10 years. *Id.*

unskilled.[4] (R:18-19) Finally, if such an individual had to take unscheduled breaks over twenty percent of the work day, due to medical conditions, that such requirement would not be tolerated for employment. (R:19) Plaintiff's attorney inquired whether a person unable to maintain concentration, persistence, or pace for up to two hours at a time would be deemed unsuitable for employment, the vocational expert answered in the affirmative. (R:19-20)

### 6. The ALJ's Consideration of Plaintiff's Mental Impairment

Plaintiff asserts that the ALJ erred in finding his mental impairment to be non-severe. He argues that his mental impairments, including pain and fatigue, can affect his concentration, persistence, or pace. Also, he complains that the ALJ erred by failing to account for his mental impairments in the RFC determination.

The mere presence of an impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Rather, it is the Plaintiff's burden to establish disability and to provide or identify medical and other evidence of his impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(c), 416.912(c). His own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529, 416.908, 416.928, 416.929. Further, impairments that are remedied or controlled by medication or treatment are not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

At Step Two of the sequential analysis process, the ALJ must determine the severity of an impairment, irrespective of the claimant's age, education, or work experience. 20 C.F.R. §§ 404.1520, 416. 920. The Fifth Circuit has held that an impairment is considered as not severe "only

---

[4]Unskilled work is work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. §§ 404.1568, 416.968.

if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985).

In determining the severity of a mental impairment at steps two and three of the sequential analysis, the regulations require a special technique be used in the process. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ must rate the degree of functional limitations that result from the mental impairment in four broad areas known as the "Paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(b) , 404.1520a(c), 416.920a(b), 416.920a( c); Pt. 404, Subpt. P, App. 1, § 12.00. The first three areas are rated on a five point scale: none, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale ranging from "none" to "four or more" episodes. 20 C.F.R. § 404.1520a(c), 416.920a(c).

The ALJ found Plaintiff's medically determinable impairment of depression to be non-severe, causing no limitations in any of the first three functional areas and no episodes of decompensation of extended duration in the fourth area. (R:39) In her decision, the ALJ acknowledged that the limitations identified in Paragraph B are not an RFC assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. (R: 17) *See* SSR 96-8p, 1996 WL 374184 at *4. The mental RFC assessment used at steps 4 and 5 require a more detailed assessment by itemizing functions within the broad categories. *Id.* The ALJ must consider the extent of limitations to work-related mental functions; including understanding, remembering, and carrying out instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers, and work situations; and dealing with changes in a routine work setting.

*Id.* at * 1, 6. Consequently, the ALJ stated that her RFC determination reflected the degree of limitation she found in this mental function analysis.

Review of the medical evidence shows that although Plaintiff reported having problems with concentration, memory, and completing tasks, there is no objective medical evidence to support such limitations. In February 2013, Plaintiff denied any cognitive problems, depression, anxiety, or memory loss. Dr. Alozie found him to be alert, cooperative, with normal mood, and normal attention span and concentration. Similarly, in May 2103, treatment records from Dr. Alozie show normal attention span and concentration, and normal mood and affect, with no evidence of cognitive problems. The notes reflect that Plaintiff's fatigue had improved and rarely occurred and that his anxiety and stress showed improvement. Consequently, the Medical Report on Adult with Allegation of HIV, by Dr. Alozie in March 2013, finding Plaintiff with marked limitations in the four functional areas is not consistent with his treatment notes.

Additionally, although medical notations from Dr. Cuetter in May 2013 reported Plaintiff having a depressed mood, anxiety and dizziness, they also showed him as being alert and oriented with a normal physical examination. Subsequent treatment notes in May and July 2013 showed Plaintiff reported no pain and no side effects from his HIV medication. Thus, his argument that his depression, including pain and fatigue, interferes with his ability to work is not supported by the medical evidence of record. Further, Dr. Alozie's Medical Source Statement from November 2013, finding Plaintiff limited to less than sedentary work, due to his HIV, restless leg syndrome, and back pain does not reference any mental impairment. Moreover, Dr. Alozie's letter of care, dated February 12, 2014, does not indicate treatment of any mental impairment.

Thus, the ALJ considered the evidence of record, and properly determined that Plaintiff's

depression was not a severe impairment. Aside from Plaintiff's subjective complaints, there is a lack of objective evidence to support Plaintiffs complaints.

Even if the ALJ erred in failing to assess Plaintiff's depression as severe at step two, such error is not grounds for reversal or remand where the ALJ proceeds to the remaining steps and substantial evidence supports the ALJ's finding of non-severity. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (any error by the ALJ in not following the procedures set out in *Stone* is harmless where substantial evidence supports the ALJ's decision); *Herrera v. Astrue*, 406 Fed. Appx. 899, 903 (5th Cir. 2010) (step two error did not warrant remand where ALJ proceeded to further steps of the analysis). In this case, the ALJ proceeded to the remaining steps of the sequential analysis and still found Plaintiff not disabled. The ALJ found that Plaintiff retained the capacity to perform his past relevant work, and proceeded to further find that other work existed which Plaintiff could perform. Such other work included sedentary unskilled work, which would accommodate limitations in concentration, persistence, or pace.

Unskilled work is defined as work requiring little or no judgment to do simple tasks that can be learned in a short time, and corresponds to a Specific Vocational Preparation (SVP) of 1-2. 20 C.F.R. §§ 404.1568, 416.968; SSA Program Operations Manual System (POMS) DI 25015.030. Generally, unskilled work includes the ability to understand, carry out, and remember simple instructions, make simple work-related decisions, respond appropriately to supervision, co-workers, and work situations, and deal with changes in a routine work setting. SSR 96-9p, 1996 WL 374185 at *9; POMS DI 25020.010.

Each of the occupational titles described by the vocational expert as other work the Plaintiff could perform carried an SVP of 2. Thus, even if the ALJ erred in failing to properly consider

Plaintiff's mental impairment and possible limitations in concentration, persistence, or pace, the alternative unskilled work described by the vocational expert would accommodate such limitations.

Further, Plaintiff contends that the ALJ failed to accommodate his mental limitations in the RFC determination. However, the ALJ is not required to incorporate limitations in the RFC that she did not find to be supported by the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Nonetheless, any error in this regard would be harmless, because the ALJ's finding that other work existed, that being unskilled sedentary work, adequately accommodated the mental limitations claimed by Plaintiff. *See Norwood v. Astrue*, No. 3:12CV66 HTW-LRA, 2013 WL 959937 (S.D. Miss. Feb. 22, 2013) (where ALJ found Plaintiff's depression non-severe, vocational expert's identification of unskilled work Plaintiff could still perform adequately incorporated mental limitations in RFC) (recommendation adopted, 2013 WL 959895 (Mar. 12, 2013)). Thus, the ALJ properly considered the evidence regarding Plaintiff's mental limitations using correct legal standards, such that her determinations are supported by substantial evidence. Plaintiff's contention is without merit.

### 7. *Consideration of Treating Physician Medical Source Opinions*

Plaintiff contends that the ALJ erred in attributing little weight to the medical source opinions of treating physician, Dr. Alozie, limiting Plaintiff to less than sedentary work and attributing him with marked limitations in daily living activities, social functioning, and concentration, persistence, and pace. (R: 322-23, 400-03) He further argues that the ALJ should have obtained additional evidence or sought clarification, if Dr. Alozie's opinions were insufficient.[5]

---

[5] Plaintiff relies upon 20 C.F.R. § 404.1512(e) (eff. Aug. 1, 2006, to Jun. 12, 2011) for this argument. However, as noted by the Commissioner, that regulation has been repealed. *See* 77 FR 10655, 10656, eff. Mar. 26, 2012; *Proge v. Commissioner of Social Sec.*, 2014 WL 4639462 at *3 n. 11 (N.D.

13

Generally, more weight will be given to the opinion of a source who has examined the claimant than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527, 416.927. A treating source's opinion ordinarily will be given controlling weight, unless it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case. *Id.* If the opinion is not given controlling weight, the ALJ will consider and weigh certain facts pertaining to the treating relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and other factors tending to either support or contradict the opinion. *Id.*

In this case, Dr. Alozie completed a Medical Report on Adult with Allegations of Human Innumodeficiency Virus (HIV) Infection on March 8, 2013, indicating that Plaintiff had marked limitations in daily living activities, social functioning, and concentration, persistence, and pace. However, as noted by the ALJ, Dr. Alozie failed to provide any explanations as to why he found Plaintiff to have marked limitations. The record fails to support this degree of limitation. In fact, his own treatment notes from February and May 2013 indicate that Plaintiff had normal attention span and concentration. Further, the treating relationship was of minimal length, as the medical record reflects that Plaintiff was initially evaluated by Dr. Alozie on February 26, 2013. Because this opinion was inconsistent with other medical evidence, the ALJ could properly attribute less weight to it.

---

Miss. Sept. 16, 2014). Similar regulations now appear at 20 C.F.R. §§ 404.1520b, 416.920b (eff. Mar. 26, 2012), but no longer make recontacting a requirement. Under the revised regulations, the ALJ may recontact the medical source if the ALJ has insufficient evidence to determine whether the claimant is disabled. Under either the prior or present regulation, the ALJ is not required to order more evidence where the record is sufficient to establish whether the claimant is disabled. *See Lee v. Colvin*, 2015 WL 3604133 (M.D. La. Jun. 5, 2015); *see also Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).

Dr. Alozie also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on November 14, 2013, finding Plaintiff could lift or carry less than ten pounds occasionally, stand or walk at least two hours in an 8-hour work day, and would need to alternate sitting and standing. In her RFC determination, the ALJ accounted for a restricted level of sedentary work, requiring the ability to alternate sitting and standing, due to Plaintiff's reported pain, fatigue, and evidence of his mild degenerative disc disease. The ALJ further considered the treatment notes of Dr. Cuetter, from July 2013, indicating normal gait, coordination, sensation, and muscle tone. Thus, contrary to Plaintiff's assertions, the ALJ properly considered and weighed Dr. Alozie's opinions, and found them unsupported and inconsistent with the other medical evidence of record. Plaintiff's argument is without merit.

## CONCLUSION

The Court concludes that the ALJ's decision is supported by substantial evidence, and comports with relevant legal standards. Based on the foregoing, the Court hereby ORDERS that the decision of the Commissioner be AFFIRMED.

SIGNED and ENTERED on September 30, 2015.

NORBERT J. GARNEY
United States Magistrate Judge